**Opinion issued June 5, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00182-CV

_____

**CURTIS MOORE, Appellant**

**V.**

**VERONICA MOORE, Appellee**

---

**On Appeal from the 310th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-52535**

---

## MEMORANDUM OPINION

In this divorce case, we consider whether the trial court erred in (1) characterizing appellant's separate property as community property and including it in the community property division, thereby causing a property division that was

not just and right; and (1) ordering that the appellant to pay periodic child support in the amount of $1500 per month. We affirm in part and reverse and remand in part.

## BACKGROUND

Appellant Curtis Moore and appellee Veronica Moore were married on January 6, 1996 and separated on August 29, 2011. They have one adult daughter and one fourteen-year-old son. Curtis worked for Halliburton Corporation as a purchasing supervisor for over 35 years. He was also involved in the real estate business with his brother since the 1980s.

Veronica filed for divorce on August 31, 2011. Before the separation, Veronica was not employed, but at the time of trial she was working 30 hours per week at a shoe store.

After a bench trial, the trial court entered a Final Decree of Divorce that dissolved the marriage, divided the community property, and determined custody and child support of the minor child. In the division of real property, the trial court concluded that 13 pieces of real property or real property interests belonged to the community and divided them between the parties. In doing so, the court noted that "CURTIS MOORE owns no separate property that is not part of the community estate of the parties as described and/or had failed to present sufficient proof of separate property if he had any," and "does not own or failed to

2

adequately document ownership of any separate property that is not part of the community." The court further noted that "CURTIS MOORE has not been forthcoming with full disclosure of financial documents." The trial court also ordered Curtis to pay $1500 per month in child support. Curtis now brings this appeal.

## JUST AND RIGHT PROPERTY DIVISION

In his first issue on appeal, Curtis contends the trial court's division of property was not just and right because (1) separate property was improperly characterized as community; (2) the evidence is insufficient to support a reimbursement claim by Veronica; (3) property that belonged to neither spouse was included in the division; and (4) the trial court's valuation of certain property is not supported by the evidence.

*Applicable Principles of Law*

In a decree of divorce, the trial court must order a just and right division of the estate of the parties. TEX. FAM. CODE ANN. § 7.001 (Vernon 2006). "Trial courts can only divide community property, [because] the phrase 'estate of the parties' encompasses the community property of a marriage, but does not reach separate property." *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). "Texas law prohibits courts from divesting spouses of their separate property." *Shanks v. Treadway*, 110 S.W.3d 444, 448 (Tex. 2003).

3

"The trial court has wide discretion in dividing the estate of the parties and that division should be corrected on appeal only when an abuse of discretion has been shown." *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *see also Garza v. Garza*, 217 S.W.3d 538, 548 (Tex. App.—San Antonio 2006, no pet.). "In exercising its discretion the trial court may consider many factors and it is presumed that the trial court exercised its discretion properly." *Murff*, 615 S.W.2d at 699. These factors include: (1) the spouses' capacities and abilities; (2) benefits which the party not at fault would have derived from continuation of the marriage; (3) business opportunities; (4) education; (5) relative physical conditions; (6) relative financial condition and obligations; (7) disparity of ages; (8) size of separate estates; (9) the nature of the property; and (10) disparities in earning capacities and income. *Id.* "A trial court does not abuse its discretion if there is some evidence of a substantive and probative character to support the decision." *Garza*, 217 S.W.3d at 549. "Because in family law cases the abuse of discretion standard of review overlaps with the traditional sufficiency standards of review, legal and factual insufficiency are not independent grounds of reversible error; instead, they constitute factors relevant to our assessment of whether the trial court abused its discretion." *Id.*

"Community property does not have to be divided equally, but the division must be equitable." *Alonso v. Alvarez,* 409 S.W.3d 754, 758 (Tex. App.—San

4

Antonio 2013, pet. denied). "A disproportionate division must be supported by some reasonable basis." *Id.* at 758–59.

"Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX. FAM. CODE ANN. §3.003(a) (Vernon 2006); *see also Garza*, 217 S.W.3d at 548. "The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX. FAM. CODE ANN. § 3.003(b); *see also Garza*, 217 S.W.3d at 548. Clear and convincing evidence is defined as that "measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007; *see also Garza*, 217 S.W.3d at 548.

"The characterization of property as community or separate is determined by the inception of title to the property, i.e., when a party first has a right of claim to the property by virtue of which title is finally vested." *Sink v. Sink*, 364 S.W.3d 340, 344 (Tex. App.—Dallas 2012, no pet.). Separate property includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." TEX. FAM. CODE ANN. § 3.001 (Vernon 2006).

*Standard of Review*

We review the trial court's characterization of property in a divorce under an abuse of discretion standard. *Raymond v. Raymond*, 190 S.W.3d 77, 80 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (citing *Robles v. Robles*, 965 S.W.2d 605, 613 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). We determine the issue of whether property is separate or community in nature by looking to the facts that, according to rules of law, give character to the property. *Raymond*, 190 S.W.3d at 80 (citing *McElwee v. McElwee*, 911 S.W.2d 182, 188 (Tex. App.—Houston [1st Dist.] 1995, writ denied)).

A trial court's findings are reviewable for legal and factual sufficiency by the same standards used in reviewing the evidence supporting a jury's verdict. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Moroch*, 174 S.W.3d at 857. In family law cases, however, the abuse of discretion standard overlaps with the traditional sufficiency of evidence standard of review; as such, legal and factual sufficiency are not independent grounds of reversible error, but instead "constitute factors relevant to our assessment of whether the trial court abused its discretion." *Moroch*, 174 S.W.3d at 857 (citing *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.)); *Mai v. Mai*, 853 S.W.2d 615, 618 (Tex. App.—Houston [1st Dist.] 1993, no writ). To determine whether the trial court abused its discretion because legally or factually sufficient evidence

6

does not support its decision, we must answer two questions: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. *Moroch*, 174 S.W.3d at 857. The sufficiency of evidence review "comes into play with regard to the first question." *Id.* We must then determine whether, based on the evidence presented at trial, the trial court made a reasonable decision. *Id.* To uphold the trial court's determination, we must conclude that the decision was neither arbitrary nor unreasonable. *Id.* Stated another way, the party challenging the trial court's characterization must first establish error by challenging the legal or factual sufficiency of the evidence to support the property's characterization and must then show that because of the mischaracterization, the overall division of the property was an abuse of discretion. *Viera v. Viera*, 331 S.W.3d 195, 207 (Tex. App.—El Paso 2011, no pet.)

*Characterization of Certain Properties as Community rather than Separate*

Curtis contends that the trial court erroneously characterized as community property, and awarded to him in the division, three properties that he contends were already his separate property. In its findings of fact and conclusions of law, the trial court found that "CURTIS MOORE owns no separate property that is not part of the community estate of the parties as described and/or failed to present sufficient proof of separate property if he had any." We will review the evidence

7

submitted as to each of the challenged properties to determine whether the trial court erred in its characterization.

*692 W. Boundary*

The trial court determined that the property located at 692 W. Boundary Street, Giddings, Texas, was community property, valued the property interest held by the community to be $56,550, and awarded it to Curtis in the property division. In her Second Amended Inventory and Appraisement, Veronica listed 692 W. Boundary Street as a community asset. In his initial Inventory and Appraisement, Curtis listed 692 W. Boundary as property to be included in the community property division, without specifically designating it as community or separate. In the same inventory, Curtis later identifies 692 W. Boundary as his separate property.[1] Curtis's First Amended Inventory refers to 692 W. Boundary on in the portion of the inventory in which he lists his separate property. Curtis's Third Amended Inventory, which was admitted as an exhibit at trial, again lists 692 W. Boundary only as a separate asset. Finally, Curtis's Fourth Amended Inventory, which was also admitted as an exhibit at trial, also identifies 692 W. Boundary as his separate property.

At trial, Curtis testified that he was given the property at 692 W. Boundary in 1990, some six years before he and Veronica were married. The record also

---

[1] Curtis testified at trial that he was initially listing all real property without regards to characterization.

8

contains a deed showing that Ruth Moore and Irma Moore transferred the property to Curtis on March 9, 1990. The record also contains information in the documents that Veronica's expert provided showing that Curtis obtained the property by a gift deed in 1990, and that he transferred the property to Michael Moore in 1995.

Finally, Veronica testified at trial as follows:

Q. In relation to Item 1.4 [the property at 692 W. Boundary], you would agree with me that your husband actually owned this property prior to marriage, right?

A. Just the property.

Q. All I asked you about was the property, right?

\* \* \* \*

Q. Okay. At some point in time there were apartments built on this property, true?

A. True.

Q. And when were those built, do you know?

A. No. I don't know the exact date.

Q. Were they built prior to the marriage or after the marriage?

A. Prior to the marriage.

Later, Veronica was asked, "The property [at 692 W. Boundary] was owned prior to marriage, correct[?]" to which she responded, "Correct."

9

Thus, while the trial court had some evidence to support its classification of the 692 W. Boundary Street property as community, i.e., Veronica's Second Amended Inventory and arguably Curtis's initial Inventory, we note that Veronica's assessment of the property is not supported by any documentary evidence and Curtis's initial inventory was superseded by amended inventories in which he clearly identified the property as separate property.

Indeed, we hold that the great weight and preponderance of the evidence supports the conclusion that Curtis indeed established that the property was separate. Both Curtis and Veronica testified at trial that Curtis owned the property before they were married. More importantly, all of the documentary evidence relating the property, including a real property deed, shows that Curtis acquired the by gift in 1990. Because there is factually insufficient evidence to support the trial court's characterization of the 692 W. Boundary Street property as community property, the trial court erred by including it in the community property division.

*846 W. Austin*

The trial court determined that the property located at 846 W. Austin, Giddings, Texas, was community property, valued the property interest held by the community to be $11,620, and awarded it to Curtis in the property division.

In her Second Amended Inventory and Appraisement, Veronica listed 846 W. Austin as a community asset. In his initial Inventory and Appraisement, Curtis

10

lists 846 W. Austin only as separate property. Curtis's First Amended Inventory lists 846 W. Austin as both community and separate property. Curtis's Third Amended Inventory lists 846 W. Austin as both separate and community. Finally, Curtis's Fourth Amended Inventory, which was also admitted as an exhibit at trial, identified 846 W. Austin as both separate and community.

At trial, Curtis testified that he and his brothers, Victor and Michael Moore, obtained the property at 846 W. Austin in 1985. The record also contains a deed showing that Curtis, Victor, and Robert Moore purchased the property from Martin and Norma Halick on July 22, 1985. The record also contains information in the documents that Veronica's expert provided showing the deed history of the property, with the last transfer occurring in 1990.

Finally, Veronica testified at trial as follows:

Q. Page 2 of Petitioner's 18, Item 1, what property is identified there, ma'am?

A. 86—846 West Austin, Giddings, Texas.

Q. Okay. And it's true, is it not that Mr. Moore owned that property prior to the marriage?

A. Yes.

Again, while the trial court had some evidence to support its classification of the 846 W. Austin property as community, i.e., Veronica's Second Amended Inventory and Curtis's conflicting inventories, we again note that Veronica's

11

assessment of the property as community is not supported by any documentary evidence.

Indeed, we hold that the great weight and preponderance of the evidence supports the conclusion that Curtis established that the property was separate. Both Curtis and Veronica testified at trial that Curtis owned the property before they were married. More importantly, all of the documentary evidence relating the property, including a real property deed, shows that Curtis and his brothers acquired the property in 1985. Because there is factually insufficient evidence to support the trial court's characterization of the 692 Boundary Street property as community property, the trial court erred by including it in the community property division.

*Redding Springs Property*

In the divorce decree and in the findings of fact and conclusions of law, the trial court included the property at 6630 Redding Springs, Houston, TX, as community property. The findings of fact specifically state that the "Court finds that CURTIS MOORE owns no separate property that is not part of the community estate[.]" However, in Exhibit A, which is attached to and incorporated into the Findings of Fact and Conclusions of Law, the Court describes the Redding Springs property as follows:

12

Lease house at 6630 Redding Springs, Houston, Texas 77086, separate property of CURTIS MOORE, with the community reimbursement value of $20,000 awarded to CURTIS MOORE.

We recognize that findings of fact and conclusions of law filed after a judgment are controlling if there is any conflict between the two documents. *Arena v. Arena,* 822 S.W.2d 645, 652 (Tex. App.—Fort Worth 1991, no writ); *Bendele v. Tri–County Farmer's Co-op*, 635 S.W.2d 459, 469 (Tex. App.—San Antonio),*aff'd as modified*, 641 S.W.2d 208 (Tex. 1982); *Law v. Law*, 517 S.W.2d 379, 383 (Tex. Civ. App.—Austin 1974, writ dism'd). However, here there is an inconsistency within the findings of fact and conclusions of law themselves. In one portion of the findings, the Redding Springs property is designated as community, and in Exhibit A, it is described as Curtis's separate property. The parties' briefs are equally confusing as to whether the "reimbursement claim" is to be awarded to Curtis or to Veronica. Indeed, Veronica's brief argues that "Mr. Moore appears to be arguing against an award to himself," and in another portion of her brief she states, "If the trial court made any error, it was in awarding Mrs. Moore $20,000.00 instead of $113,400.00." It appears to this Court that the trial court included the Redding Springs property in its community division, but valued it at only $20,000 in recognition of Curtis's pre-marriage interest in the property.[2]

---

[2]    At trial, Veronica was asked about the Redding Springs property, and the following exchange took place:

Thus, we will review the sufficiency of the evidence to support the characterization of the Redding Springs property as community property. Veronica's Second Amended Inventory includes the Redding Springs property as community property. Curtis's initial inventory list Redding Springs in two places on his inventory. In its first mention, it is not characterized, but when mentioned again it is classified as his separate property. In his First Amended Inventory, Curtis lists Redding Springs only as separate property. The same is true of his Third and Fourth Amended Inventories. There is also a deed in the record showing that Curtis obtained the property from the secretary of the Department of Housing and Urban Development in 1985.

At trial, Curtis testified that he had owned the Redding Springs property since 1985. Veronica also testified that Curtis owned Redding Springs before marriage.

> Q. And this address, this property that's 1.2, the Redding Springs, Houston, Texas, did Mr. Moore, you husband, have that prior to your marriage?

---

> Q. Now this 1.2 property, your proposal is requesting that the Court only consider $20,000.00 of that value; is that correct?
>
> A. Yes.
>
> Q. So you're doing that in consideration of your husband having an interest in it prior to you being married?
>
> A. Yes.

14

A. Yes.

Again, while the trial court had some evidence to support its classification of the 846 W. Austin property as community, i.e., Veronica's Second Amended Inventory and Curtis's initial inventory, we again note that Veronica's assessment of the property as community is not supported by any documentary evidence and Curtis's initial inventory was subsequently amended, each time describing Redding Springs as separate.

Indeed, we hold that the great weight and preponderance of the evidence supports the conclusion that Curtis established that the property was separate. Both Curtis and Veronica testified at trial that Curtis owned the property before they were married. More importantly, all of the documentary evidence relating the property, including a real property deed, shows that Curtis and his brothers acquired the property in 1985. Because there is factually insufficient evidence to support the trial court's characterization of the Redding Springs property as community property, the trial court erred by including it in the community property division.

*Abuse of Discretion?*

Having concluded above that the evidence is insufficient to support a characterization of the above-referenced properties as community property, we must now determine whether the trial court erred in exercising its discretion in

15

dividing the community. When a trial court mischaracterizes separate property as community property, the error requires reversal if the spouse is divested of the separate property. *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 142 (Tex. 1977) ("Trial courts have a broad latitude in the division of the marital community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other.").

Here, however, Curtis was not divested of the fee to the separate properties because they were awarded to him in the division. In such cases, we remand the entire community estate for a new division only if the trial court's error materially affects the trial court's just and right division of the community estate on the whole; reversal is not necessary if a mischaracterization of property has only a *de minimis* effect on the trial court's just and right division. *See*, *e.g.*, *Monroe v. Monroe*, 358 S.W.3d 711, 718 (Tex. App.—San Antonio 2011, pet. denied) ("Even though the jewelry was separate property, we remand the entire community estate for a new division only if '[we] it find[] reversible error in a specific part of the division that materially affects the trial court's just and right division of the *entire* community estate.' Reversal is not required if the mischaracterization of property has only a *de minimis* effect on the trial court's just and right division.") (quoting *Grossnickle v. Grossnickle*, 935 S.W.2d 830, 836 (Tex. App.—Texarkana 1996, writ denied) (emphasis added)); *Graves v. Tomlinson*, 329 S.W.3d 128, 153–

16

54 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (reversing and remanding for new division when trial court's mischaracterization of $134,000 in community property as separate property had "more than a *de minimis* effect on the trial court's just and right division" and "materially affected the court's just and right property division").

Here, the trial court's findings of fact show that it divided real property between the parties that had a total value of $455,730. Of this amount, $88,170 of Curtis's separate property was erroneously included in the community ($20,000 for Redding Springs, $56,500 for 692 W. Boundary, and $11,620 for 846 W. Austin). We cannot say the trial court's error had a *de minimis* effect on the trial court's just and right division of community property. Therefore, we reverse the trial court's property division and remand for a new division that excludes the erroneously characterized property.

Curtis also complains that 5 other pieces of real property were erroneously included in the community because neither he nor Veronica possessed an interest in those properties, and he contends that two items of property were misvalued. Because we have already found reversible error in the division, we need not address these claims and decline to do so. The trial court may consider those issues on remand as well as any reimbursement claims Veronica may have regarding the properties we have held to be Curtis's separate property.

We sustain Curtis's first issue on appeal.

## CHILD SUPPORT

In his second issue on appeal, Curtis contends the trial court erred in ordering him to pay periodic child support of $1500 per month. Specifically, Curtis claims that his gross monthly salary of $8000, plus less than $300 in net rental income each month, would support a child support award of only $1,273.60 per month.

*Standard of Review and Applicable Law*

The purpose of child support is to help a custodial parent maintain an adequate standard of living for a child. *Farish v. Farish*, 982 S.W.2d 623, 627 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (citing *Williams v. Patton*, 821 S.W.2d 141, 145 (Tex. 1991)). The determination of the amount of child support to be paid is left to the discretion of the trial court and will not be disturbed on appeal absent a clear showing of abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re L.R.P.*, 98 S.W.3d 312, 313 (Tex. App.—Houston [1st Dist.] 2003, pet. dism'd). A trial court abuses its discretion when it acts without reference to any guiding rules and principles. *Worford*, 801 S.W.2d at 109; *McGuire v. McGuire*, 4 S.W.3d 382, 384 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Sufficiency challenges are not independent points of error in the child-support context, but are "incorporated into an abuse of discretion

18

determination." *McGuire*, 4 S.W.3d at 387 n.2; *see Newberry v. Bohn–Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We employ a two-pronged inquiry in such cases: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Moreno v. Perez*, 363 S.W.3d 725, 735 (Tex. App.—Houston [1st Dist.] 2011, no pet.). A trial court does not abuse its discretion when there is some evidence of a substantive and probative character to support its order. *Newberry*, 146 S.W .3d at 235.

In determining a child-support award, section 154.062 of the Texas Family Code requires a court to calculate "net resources" for the purpose of determining child-support liability. TEX. FAM. CODE ANN. § 154.062(a). "Courts may calculate net resources on 'imprecise information,' and the trial court has "broad discretion in setting child support." *Ayala v. Ayala*, 387 S.W.3d 721, 727 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "Net resources" include all wage and salary income, self-employment income, and all other income received. TEX. FAM. CODE ANN. § 154.062(b). The obligor is required to furnish information sufficient to accurately identify his net resources and ability to pay child support. *In re N.T.*, 335 S.W.3d 660, 666 (Tex. App.—El Paso 2011, no pet.); *Garner v. Garner*, 200 S.W.3d 303, 306 (Tex. App.—Dallas 2006, no pet.); *see* TEX. FAM. CODE ANN. § 154.063. "'There must be some evidence of a substantive and

19

probative character of net resources' in order for the court to discharge its duty under section 154.062." *Miles v. Peacock*, 229 S.W.3d 384, 389 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *Newberry*, 146 S.W.3d at 236); *Ayala*, 387 S.W.3d at 727.

The trial court is not required to accept the obligor's evidence of income and net resources as true. *In re N.T.*, 335 S.W.3d at 666; *Hardin v. Hardin,* 161 S.W.3d 14, 23 (Tex. App.—Houston [14th Dist.] 2004, no pet.), *judgm't vacated, op. not withdrawn*, No. 14–03–00342–CV, 2005 WL 310076 (Tex. App.—Houston [14th Dist.] Feb. 10, 2005, no pet.). Instead, the trial court may properly determine that an obligor has higher net resources based on testimony by the obligee and other evidence in the record. *In re N.T.,* 335 S.W.3d at 666.

*Analysis*

As the obligor, Curtis bore the burden to present sufficient information of his net resources and ability to pay child support. Curtis's 2011 W-2 showed that his gross wages that year were $95,999.49, or approximately $8,000 per month. Curtis testified that this amount was inflated because he received a one-time bonus of $5,000, which he claimed he was not eligible to receive again. While there are documents purporting to be 2012 pay statements in the record that show a monthly salary of less than $8,000, these statements do not address the issue of whether

Curtis was entitled to receive any sort of bonus, and the trial court could have concluded that Curtis's W-2 accurately reflected his gross salary.

Regarding Curtis's rental incomes, he claimed to have netted only $388.40 per month on his rental properties. In support, he points to his 2010 tax return, in which he claimed net rental income for the year in the amount of only $288.17 per month. He bases his insurance, repair, and taxes on the amounts indentified in his 2010 tax return, but was is no other documentary evidence of liabilities and expenses at the time of trial. There was also testimony that Curtis received $800 per month for the Redding Springs property, $9,600 per year for the apartments at 692 W. Boundary (in another portion of the testimony, Curtis stated he was receiving $645 per month for each apartment), and $525 per month for the rental of 886 W. West Austin. Curtis was also providing an apartment to his mother rent free. Based on the scarcity of documentary evidence regarding income and expenses of Curtis's rental properties, the trial court could have disbelieved his testimony that he earned only $388 per month in net rental income, especially in light of the trial court's unchallenged finding that "CURTIS MOORE has not been forthcoming with full disclosure of financial documents." The credibility of witnesses in a divorce action is solely under the purview of the trial court, not the appellate court. *Zagorsky v. Zagorsky*, 116 S.W.3d 309, 318 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

Based on this testimony and evidence, the trial court ordered $1500 in monthly child-support payments, which corresponds to an implied finding that Curtis had at least $7500 in monthly net resources pursuant to the standard child-support award schedule. *See* TEX. FAM. CODE ANN. § 154.125 (providing that the court shall presumptively order that an obligor pay 20% of monthly net resources in child support for one child). Because the determination of the child-support award was supported by the testimony of the parties and the documents introduced at trial, the trial court's decision was supported by some evidence of a substantial and probative character. *See In re N.T.*, 335 S.W.3d at 666–67 (holding that given appellant's failure to produce documents of his earnings, the trial court was within its discretion in basing its net resources determination on the conflicting testimony of the parties). Accordingly, the trial court did not abuse its discretion in its determination of the amount of child support.

We overrule Curtis's second issue.

## CONCLUSION

Because we cannot say the trial court's error in mischaracterizing separate property had a *de minimis* effect on the trial court's just and right division of community property, we reverse the trial court's property division and remand for a new division. We affirm the remaining portions of the judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.